UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
**FILED**
OCT 2 - 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2005-56 (WOB)

**MARIE HELMS**                                       **PLAINTIFF**

VS.                    **OPINION AND ORDER**

**GEORGE ZUBATY, ET AL**                     **DEFENDANTS**

This matter is before the court on defendants' motions for summary judgment (Doc. ##21, 21). The court heard oral argument on these motions on August 25, 2006. Shane Sidebottom and Stephen Wolnitzek represented the plaintiff, and Jeffrey Mando and David Bowles represented the defendants. Also in attendance was plaintiff's husband, George Helms. Official court reporter Joan Averdick recorded the proceedings.

Having heard the parties, the court now issues the following opinion and order.

**FACTUAL BACKGROUND**

In 2003, George Zubaty ("Zubaty"), Judge Executive of Gallatin County, Kentucky, began discussions with members of the fiscal court about instituting a payroll tax to remedy a deficit in the county budget. The payroll tax went into effect in October of 2004.

Plaintiff, Marie Helms, is a resident of Gallatin County. She was opposed to the payroll tax and voiced her opinion in hearings

and in letters to the editor of the Gallatin County News. In these letters, Helms was critical of Zubaty and his administration.

On July 15, 2004, Helms went to Zubaty's office intending to meet with him about the payroll tax.[1] Zubaty's receptionist, Alma Chipman ("Chipman"), was in the office when Helms arrived and told Helms that Zubaty was at a conference and would not return that day. Helms then sat down in the office chair across from Chipman's desk. Helms does not dispute that she sat down and indicated an intent to remain in the office even after being told that Zubaty would not be available that day.

Several minutes later, Winslow Baker ("Baker"), Gallatin County Zoning and Planning Administrator, returned from lunch to the office space he shared with Zubaty and other staff. Baker passed the reception desk into his office while Helms was speaking to Chipman. Baker stated that after he entered his office, he could still hear Helms talking to Chipman and that her talking was keeping him from returning phone calls.

Baker returned to the reception area and asked Helms to leave the office, and she refused. Baker then telephoned the police.

Officer Brent Caldwell ("Caldwell") received a call on the dispatch and arrived to the office shortly thereafter. When he entered, Helms was seated across from Chipman. Caldwell asked what

---

[1] To the extent that the parties' accounts of this day differ, the court construes the facts in the light most favorable to plaintiff, the non-moving party.

2

was going on, and Baker responded that Helms had been asked to leave the office. Caldwell asked Helms to identify herself and tell him what the problem was. He then glanced at Chipman, and she and Baker said "payroll tax." Caldwell asked Helms to leave the office, to which she replied that the "attorney general told her that she had every right to be within a public building." Caldwell agreed with her but said that she was being asked to leave the office. Caldwell twice asked Helms to leave the office, and she refused each time. Caldwell then told Helms that he would have to arrest her for criminal trespassing. Helms was arrested for Criminal Trespassing Second Degree, KRS 511.070.[2]

Helms filed this lawsuit on March 23, 2005, alleging claims under 42 U.S.C. § 1983 for violation of her First Amendment right of free speech and for false arrest/imprisonment. Plaintiff also alleged claims under Kentucky law for assault and battery[3], abuse of process, malicious prosecution, malfeasance, and intentional infliction of emotional distress. Named as defendants in the complaint are: Zubaty; Baker; Caldwell; Donnie Gould, City of

---

[2] KRS 511.070(1) states, in part: "A person is guilty of criminal trespass in the second degree when he knowingly enters or remains unlawfully in a building . . . ." Criminal trespass in the second degree is a misdemeanor. KRS 511.070(2).

[3] Plaintiff confirmed at the hearing that plaintiff was not asserting federal constitutional claims for excessive force, but rather that the actions of Officer Caldwell regarding the physical aspects of her arrest were the basis of only the state law claims.

3

Warsaw Police Chief; and Travis Simpson, Mayor of the City of Warsaw.

## ANALYSIS

### A. § 1983 Civil Rights Violation

"The Government's ownership of property does not automatically open that property to the public." *United States v. Kokinda*, 497 U.S. 720, 724 (1990) (citation omitted). It is a long-settled principle that governmental actions are subject to a lower level of First Amendment scrutiny when "the governmental function operating . . . [is] not the power to regulate or license, as lawmaker,. . . but, rather, as proprietor, to manage [its] internal operation[s] . . . ." *Id.* (citation omitted).

The Supreme Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. *Id.* (citing *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800 (1985)). "Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum." *Id.*

Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny. *Id.* (citation omitted). Regulation of speech on

property that the Government has expressly dedicated to speech activity is also examined under strict scrutiny. *Id.* But regulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness. *Id.*

The mere physical characteristics of the property cannot dictate forum analysis. *Id.* To determine if a nontraditional forum has been designated as public, courts will look to the policy and practice of the government as well as the nature and principal function of the property. *Cornelius*, 473 U.S. at 803-804.

### 1. Public or Nonpublic Forum

In *Cornelius*, the Supreme Court determined that a charity drive aimed at federal employees was a nonpublic forum, and that the limitation of participating charities was reasonable to minimize disruption of the workplace. *Id.* at 808-809. The Court stated that it is reluctant to find a designated public forum "in cases where the principal function of the property would be disrupted by expressive activity." *Id.* at 804. "The [government] workplace, like any place of employment, exists to accomplish the business of the employer." *Id.* at 805 (citation omitted).

The forum in the present case is the office workspace of the Gallatin County Judge Executive. The nature and principal function of that space is focused on individual work activities and small meetings of designated persons, just as with any office setting.

5

Helms was sitting in a small reception area, roughly eight feet from Zubaty and Baker's shared office. Such a space is not conducive to unlimited public expressive activity.

Helms argues that Zubaty designated his office as a public forum when he instituted an "open-door" policy. However, even assuming that Zubaty made himself accessible so that his constituents could discuss public matters with their elected official, no reasonable person could understand that the office was thus open to prolonged sit-ins, particularly when the public official with whom the citizen wishes to speak is not there.

In *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738 (6th Cir. 2004), union workers attempted to solicit signatures on election day by standing near polling locations, such as schools and churches. The court held that the polling places were nonpublic fora and determined that Ohio did not intend to extend the limited use of the nontraditional fora to public discourse "merely by utilizing portions of them as polling places on election day." *Id.* at 749.

Here, even if Zubaty opened his door to the public for the purpose of hearing the concerns of the people, it does not follow that he intended to transform his office into a forum for prolonged public expression in his absence.

Given that governmental office work would be disrupted by expressive activity, Helms was expressing herself in a nonpublic

6

forum. *See Kokinda*, 497 U.S. at 729-30 (noting that the fact that government property is open to public "alone does not establish that such areas must be treated as traditional public fora under the First Amendment", and holding that the fact that the Post Office had allowed some public speech activities on its property did not add up to dedication of the space to public use as traditional public forum).

### 2. Reasonableness of Restriction

In nonpublic fora, restrictions on speech are allowed when they are "viewpoint neutral and reasonable in light of the purpose served by the forum." *City of Sidney*, 364 F.3d at 746. Reasonableness is assessed with the purpose of the forum in mind, as well as other factors. *Cornelius*, 472 U.S. at 811. *See also Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) (holding that limitations on speech at city board meetings "must be reasonable and viewpoint neutral, but that is all they need be"). The Sixth Circuit has held that viewpoint-neutral exclusions can be made if the speakers would hinder the intended purpose of the forum. *City of Sidney*, 364 F.3d at 751.

Here, it is undisputed that Zubaty was not present in the office on the day in question, and Helms stated no purpose for being in the office other than to speak with Zubaty. Baker testified that Helms' continued presence and speech were preventing him from returning job-related phone calls, and that he was not

7

able to concentrate on doing the government business at hand.

Therefore, by remaining in this small office beyond the time necessary to attend to her business, and by continuing to talk to Chipman, Helms was impeding government employees in their efforts to perform their job duties. It was thus reasonable for Baker to ask Helms to leave the office. *See Kindt*, 67 F.3d at 271-72 (holding that city board's restrictions on length of time persons could address board, and specific procedures that had to be followed to be heard, were reasonably necessary for efficient conduct of city business and not violative of First Amendment); *United States v. Bader*, 698 F.2d 553, 555-56 (1st Cir. 1983) (holding that restricting sit-ins that disrupt functioning of public building during normal business hours is reasonable under the First Amendment).

Plaintiff argues that Baker's request for her to leave the office was content-based, relying on the uniform citation completed by Caldwell following plaintiff' arrest. However, this document does not create a triable issue on this theory. The citation states:

> Criminal trespass, ind. received comp. On sub. refusing to leave the judge executive's office *because of the payroll tax*. Sub. was advised by this unit to leave the property 2 separate times. Sub. stated to arrest me and take me out of this office in handcuffs.

(Plf. Memo. Opp. Exh. D) (italics added). Contrary to plaintiff's argument, the "because of the payroll tax" language undisputedly

8

applies to the reason for plaintiff's refusal to leave the office, *not* the reason that she was asked to leave. This is an important distinction, and one which plaintiff ignores. There is no evidence that Baker made any substantive response to plaintiff's remarks about the payroll tax or Zubaty. For example, Baker did not tell plaintiff that she could not come back at a time when Zubaty would be present to hear her concerns, nor did he ask that she be otherwise prohibited from voicing her opinion on the tax. He merely asked her to leave the small office because her presence was interfering with the purpose of that space: the performance of office functions by its employees. Baker also did not ask that she be arrested; rather, he called the police only after she refused to leave the office, and all decisions taken thereafter were made by the police.

Therefore, the court concludes that plaintiff's First Amendment rights were not violated as a matter of law by virtue of Baker's request that she leave the office or by her subsequent arrest.

### 3. Qualified Immunity

Although the court has concluded that plaintiff's constitutional rights were not violated by her removal from the fiscal court building, it also finds that even if those rights had been violated, the individual defendants would nonetheless be entitled to qualified immunity.

9

In their individual capacities, government officials are generally protected from liability for civil damages when their actions do not violate clearly established rights of which a reasonable person would have known. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545 (6th Cir. 2003). The court undertakes a three-step analysis to determine if qualified immunity is appropriate: we ask (1) whether a constitutional violation occurred; (2) whether the violated right was clearly established and one of which a reasonable person would have known; and (3) whether the actions of the official were objectively unreasonable given the clearly established right. *Id.* at 546. (citation omitted).

This forum was nontraditional, making Helms' speech protected only if the forum had been designated as public. Even assuming Zubaty's open-door policy could have provided such a designation, it is undisputed that Baker was not aware of it. In his deposition, Baker testified that he had never heard Zubaty talk about having an open-door policy. Baker could thus not reasonably have known that the office had been designated as a forum for public speech.

Caldwell's actions also were not objectively unreasonable. He was called to the office after Baker telephoned the police. Once in the office, Caldwell informed Helms twice that she needed to leave the office, and twice she directly refused to do so. Caldwell thus had probable cause to arrest Helms for criminal trespass and, as a

matter of law, is entitled to qualified immunity.[4]

None of the other three individual defendants -- Zubaty, Gould and Simpson -- was present at the Judge Executive's office on the day in question, nor were they contacted regarding Helms' arrest. Therefore, the claims against them as individuals have no basis in fact or law.

### 4. Municipal Liability

Helms also named all defendants in their official capacities. By doing so, Helms is essentially bringing suit against the City of Warsaw and Gallatin County. *Kentucky v. Graham*, 473 U.S. 159 (1995).

In order to prove a § 1983 claim against a municipality, Helms must show that an official policy or custom was the "'moving force' behind the constitutional violation." *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006) (citation omitted). The acts must constitute official policy in order for the local government to be held liable, where official policy refers to formal rules or understandings that "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "The policymaker for whose conduct the plaintiff

---

[4] KRS 511.090(2) states that for purposes of the criminal trespass statutes, a person does not have a license or privilege to remain on premises which are open to the public once he or she has been lawfully asked to leave by a person with authority.

11

seeks to hold the municipality liable must possess final authority to create official policy with respect to the action ordered." *Id.*

Helms has not shown that Baker's actions constituted an official policy of Gallatin County, nor has she demonstrated that Caldwell's action reflected a policy of the City of Warsaw. Neither Baker nor Caldwell represents a final policymaker for either Gallatin County or for the City of Warsaw; they both report to defendants who were not present during the arrest.

Another way in which the municipality may be held liable is through inadequacy of police training. In *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247-48 (6th Cir. 1999), a paraplegic inmate in the Shelby County jail was not provided with adequate medical care for his condition. The court held that, because of a failure to provide adequate training in the care of handicapped inmates and because the sheriff knew that Leach's constitutional rights were being violated by his indifference to Leach's medical need, the sheriff was liable for injuries in his official capacity. *Id.* The court stated that the need for more training must be so obvious and the inadequacy so likely to result in a constitutional violation that "the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 1248.

Helms has not shown a routine violation of the right of free speech by the police. She did not cite any occasions where police had demonstrated inadequate training regarding criminal trespass or

constitutional rights and, therefore, summary judgment is proper on the official capacity claims.

### B. False Imprisonment/Arrest

False imprisonment requires a finding that the plaintiff was unlawfully detained. *Birdsong v. Wal-Mart Stores, Inc.*, 74 S.W.3d 754, 757 (Ky. App. 2001). Here, plaintiff's claim for false imprisonment against Baker fails as a matter of law. Baker was, in fact, encouraging Helms to leave and at no point held her against her will.

Helms also alleges false arrest against Caldwell, a claim which requires that the arresting officer not believe, nor have probable cause to believe, that the charged offense was committed in his presence. *Myers v. City of Louisville*, 590 S.W.2d 348, 349 (Ky. App. 1979). In the *Myers* case, a blind man attempted to enter a restaurant with his guide dog. *Id.* at 348. The owner refused entrance, but Myers insisted that he had a right to enter. *Id.* at 348-349. The law required guide dogs to be muzzled, and Myers' dog was not. *Id.* at 349. Myers insisted that the police be called, and they provided the option for Myers to leave his dog in the car. *Id.* The police told him that if he re-entered the restaurant with his dog he would be arrested for disorderly conduct, and he did so. *Id.* The court found that the arrest was proper and that any error in jury instructions was harmless. *Id.* at 350. "Standing on what he thought were his statutory rights, appellant challenged the

13

authority of the police. He could have left the premises, but instead invited his own arrest." *Id.*

Here, Caldwell had probable cause to arrest Helms for criminal trespass. "Criminal trespass occurs when a defendant enters or remains unlawfully on the victim's property, but without the intent to commit a crime." *Colwell v. Commonwealth of Kentucky*, 37 S.W.3d 721, 726 (Ky. 2000) (internal quotations and citation omitted). Criminal trespass in the second degree pertains to trespass on either a building *or* premises where notice against trespass is given. *Id.* Though Caldwell did not witness the reason for Helms' being asked to leave, Caldwell did witness Helms remaining on the property after being asked to leave. Caldwell thus had probable cause to believe that Helms was committing criminal trespass.

Finally, the court will decline to exercise its supplemental jurisdiction over plaintiff's state law causes of action, pursuant to 28 U.S.C. § 1367(c)(3).

Therefore, having heard the parties, and the court being otherwise advised,

**IT IS ORDERED** that the motions for summary judgment of the defendants (Docs. #21 and #23) be, and are, hereby **GRANTED** as to plaintiff's federal causes of action. Plaintiff's state law causes of action be, and are hereby, **DISMISSED WITHOUT PREJUDICE**. A separate judgment shall enter concurrently herewith.

This 2d day of October, 2006.

                                                            /s/ William O. Bertelsman
                                                            **WILLIAM O. BERTELSMAN, JUDGE**

TIC: 15 min.